Good morning, Your Honors. May it please the Court, Allegra Glasshauser representing Mr. Your Honors, under SORNA, the Secretary of Defense can choose, as he wishes, what military offenses require registration. The Secretary of Defense then made a list of offenses at his choosing without following any required notice and comment procedures. This type of unfettered discretion is prohibited constitutionally and under the Administrative Procedure Act. Sex offenses in SORNA include military offenses, but that's defined only as offenses specified by the Secretary of Defense. No other limits are provided. It references a public law, which actually makes it even broader, saying it's not just as the Secretary deems appropriate, not just as he designates it, but also anything else he deems appropriate for inclusion. That's exactly the type of limitless, boundaryless discretion that Congress cannot delegate to the Executive Branch, particularly when we're talking about an element of a crime. What's the authority for that important proposition? Since Schechter Poultry or Panama refining in the 30s, do we have any Supreme Court case in which a statute has been found unconstitutional under the non-delegation doctrine? No, Your Honor. It's been honored only in the breach since then. This is so you're up against a certain obstacle. With respect to non-delegation, that's true. There are only two cases that have decided that. There are definitely Supreme Court justices, likely at least four, who are interested in revisiting that rule. But what's important here is those cases from back in the 30s talk about this unlimited discretion. And since then, Congress has made an effort not to make statutes that have that type of unlimited, boundaryless discretion. So, I mean, I'm more focused on the APA argument that you started with, but with respect to the non-delegation argument here, what is so unbounded about the authority given to the Secretary of Defense here? He's given no rules to follow. He's told he can specify the offenses and include any that he deems appropriate. That's it. Full stop. There's no other limits that are provided for what he can include and what has been chosen to be included in the past. It's got to be a sexual element or a sexual offense element, no? No, Your Honor. As part of the no? No. The definition of military offenses does not require a sexual element. And that's really the crux of the situation here. The definition for the civilian offenses does. It requires that nexus, not so for military offenses. And that's why, when the Secretary included indecent language as one of the offenses Which are sex offenses as that term is defined in SORNA and such other conduct as the Secretary deems appropriate for inclusion. Is that the part that you've got a problem with? Yes, Your Honor. The such other con so first it just says as specified by the Secretary and then other conduct the Secretary deems appropriate. That catch-all can be anything. And the Secretary has interpreted it that way, including indecent language offenses, which are speech cases, which are not cases that have a sexual conduct nexus. And that shows that the Secretary hasn't felt restrained by this language, as well he shouldn't. He's not restrained by this language. So you're saying that our reading of this particular provision, 2911, should lead us to believe that the Secretary of Defense has discretion, for example, to list theft as a sexual offense, as a military offense slash sexual offense. Yes, Your Honor. Right. If that's one of the military offenses, the Secretary can deem that appropriate for inclusion. The Secretary isn't limited, and that's the problem. And that is even more of a problem when we consider the APA violation. So not only is the Secretary not limited by the terms of the statute, in practice the Secretary has created the list of offenses without going through the required notice and comment period. Is it your position that we, just to go back to the non-delegation issue, is it your position that we have anything beyond the text of the statute? Can we, for example, consider the purpose of the statute, the history of the statute? You can, Your Honor, but those things don't limit the military offenses definition in this case. So in the previous cases where this Court and other courts and the Supreme Court have looked at SORNA in the context of what the Attorney General could do, the courts have stated that the limits on the Attorney General include things like the offenses that qualify. So the Attorney General isn't deciding who is a sex offender, who is going to meet that element of the crime. The Attorney General is deciding things like when should people who were convicted before SORNA fall under the statute, and that was the limit. Here we don't have that. The Secretary of Defense isn't limited by the other parts of the statute that don't say that he's so limited, and that's how he has exercised his discretion as delegated, to do it as he so sees fit. And so when we think about that part, that the Secretary has unlimited discretion to include anything, and if I may, moving to the APA violation, the way the Secretary has gone about this without any notice and comment means that there's no, there's no external limit on what the Secretary is doing either. The Secretary can decide, or has, has been, deciding at his whim which offenses meet the statute and when they should be changed. And there's no justification for avoiding notice and comment here. The DOD is covered by the APA. The Secretary hasn't indicated there's any sort of good cause to avoid the APA. And this isn't a core military function, the government has argued. SORNA is a civilian statute. Well, is there not an exception for foreign affairs, military affairs? There's an exception for military functions, which this circuit and every circuit who has looked at it has interpreted narrowly, only for things that directly affect the military. There are no examples like this of a civilian Federal criminal statute. The examples the government points to show how far afield this is. They point to a case after 9-11 where fingerprinting and deportation proceedings fell under the foreign affairs exception because it so clearly affected diplomatic relationships between the U.S. and foreign countries. They point to a case where the military, the side of the First Circuit, set a boundary where civilians could not, could not be deported. They were testing bombs, which also seems to clearly meet a military function. And then there's one Ninth Circuit case where the Court says that civilian security guards, even ones who are guarding a nuclear arms facility. Was your client a civilian security guard or an Army service member? He was at one point an armed service member and then was discharged. Yes. Which is another important point, Your Honor. This applies equally to people who are currently in the military and people who are no longer in the military. You mean the registration? Yes. Yes. Which offenses apply and when you must register. It has nothing to do with whether or not you're a current armed services member. And there are no cases like this one that would expand the military affairs exception to something that was not directly military related. There are no examples. And this, this Court has said that that, that rule must be narrowly construed. Other circuits have, there's precedent for striking down portions of SORNA based on the lack of notice and comment. There are a number of circuits that did so for the interim rule passed by the Attorney General before the final rule relating to pre-act offenders, specifically because there was no notice and comment. This circuit hasn't addressed it, but I believe it's four or five circuits that struck down that rule for the lack of notice and comment. SORNA isn't somehow exempted from that rule. And it provides important limits on, on what can be a criminal offense. Here we have the limitless statute combined. You found, is there a single district court decision anywhere that has determined that this scheme is not, does not fall within the military function exception? I haven't found a single case relating to this. Okay. I believe that the, the government and I are in agreement of the universe of cases that relate at all to the military function exception, and it's three. Yeah. So this is an exception that is not even, it's not even relied on by agencies or the government. It seems, it seems it's only relied on exceedingly rarely. And when it is relied on, the courts interpret it very narrowly. Here, there's no particular, on its face, there's no reason why the Secretary of Defense could not do notice and comment. The DOD falls under the APA. So there's not some general exception that any time the Department of Defense is acting, that the APA doesn't apply. On the contrary, it does. Mr. Glasshouse, let me follow up with, on Judge Loyer's question along the same lines, but perhaps from a different angle. Were you to prevail here, you would, you would have achieved, this would be a, this case would stand alone. Is that right? I mean, it would be unprecedented. But, but of course you're in the business of, of making arguments that are unprecedented. So there's nothing wrong with that. But that, that's the case, right? This would be, this would be a big deal. Well, I don't think it would be a big deal. It just hasn't been raised before. I don't think it's, it just hasn't come up. However, however we rule, it will be unprecedented. Exactly, Your Honor. Thank you. And it will apply to a small group of individuals, and particularly here, just Mr. Mingo. Thanks very much. Thank you. May it please the Court. My name is Nathan Wren. I'm an assistant United States attorney. Was there a, was there a permanent decision not to engage in notice and comment? Your Honor, there's no indication of that in the administrative record, which consists of a Department of Defense proclamation. But what I would note on that, which is very important, is that that promulgation contains a number of regulations having to do with the military court-martial system, which were not subject to notice and comment. And it's important to recognize that because the idea that this is somehow unprecedented just isn't true. What's unprecedented is the suggestion that the Secretary of Defense needs to follow notice and comment when issuing rules governing the military justice system and governing the way in which courts-martial should be conducted. And if you look at the promulgation that contained the list of designated SORNA offenses, it's an example of how the military does issue regular updates to the way that courts-martial function, and as far as we can tell, does not typically follow notice and comment for those. And there's a very important reason for that, because the courts-martial system relates directly to and has consequences for military affairs. And that's the standard at this point. Scalia, you said not typically. Does it ever? I'm not aware of cases in which it has. We haven't done an exhaustive research into that. But certainly the defense in this case has never suggested that there's some precedent for the military following notice and comment when it pertains to the courts-martial system and when it pertains to military discipline. And I think the reason for that is that this is exactly the sort of thing that's really in the heartland of that military affairs exception to the Administrative Procedure Act. But it applies to both service members, civilians, security. It applies to everybody within the military. Well, the violations of the UCMJ and prosecutions by courts-martial specifically apply to service members, as was the case with the defendant here. And what we have here is a – But the provision at issue here applies to everybody. The – no. The provision here only designates violations of the UCMJ, the Uniform Code of Military Justice, which are prosecuted by court-martial to people who are subject to military jurisdiction. I don't know that that's necessarily limited only to active-duty service members, but it doesn't apply more broadly than that. Now, it is true that in designating those offenses, the collateral consequence of that extends beyond the active-duty service member's time in the military. After your discharge. After your discharge, you continue to be subject to the SORNA system. But the same could be said of any number of military offenses. In fact, almost any serious military offense, for example, carries with it other civil consequences, such as the inability to possess a firearm, such as certain consequences with voting with respect to many States that don't allow voting by former felons. It's well known that military offenses are typically treated as criminal offenses carrying the same collateral consequences as other criminal offenses, extending beyond the active-duty service member's time in the service. And yet, nonetheless, the Secretary of Defense is given a wide body of discretion to implement military justice rules in accordance with that person's unique expertise in governing the military. And I would just note that Chief Justice Roberts. And you're telling us that you know of no situation in which the Secretary of Defense has been required to apply the procedures of the APA in circumstances involving any criminal issue. Correct, Your Honor. The government is not aware of that. There certainly does not appear to be any case law in which any case has suggested that the military affairs exception does not apply to the courts-martial system. Does this apply to the dependence of military personnel, for example, in bases abroad? I — Your Honor, that goes beyond my expertise. I'm not — I don't know if they're subject to the UCMJ's criminal — Well, wouldn't that be important? I mean, if my 18-year-old all of a sudden gets roped into this, you would think that, you know, which has nothing to do with the military, it would be important to know that this was subject to notice and comment. Well, I would argue that the Secretary of Defense, when dealing with service members positioned abroad, needs to have the ability to implement a courts-martial system that preserves military discipline for everybody subject to military jurisdiction. How does the military function exception apply to dependence of people in the Army? I'm a Southern Army person. Your Honor, I — again, I don't even know if they are subject to the UCMJ. We could submit supplemental authority on that specific point. But I would say that, you know, if you look at the Kebido case, where the Supreme Court delegation to the Secretary of Defense is even a constitutional exercise of congressional authority, and you look at what Chief Justice Roberts said, he said that the reason this is a proper use of congressional authority under the military affairs doctrine is that a service member will be less likely to violate a relevant military regulation if he knows that, having done so, he will be required to register as a sex offender years into the future. So here you have the Supreme Court and Chief Justice Roberts in his concurring opinion specifically tying this aspect of SORNA to the need to have military discipline. And if you read that decision further and Chief Justice Roberts' concurrence further, he's really emphasizing the importance of — military discipline needs to be reflexive. It needs to be automatic. And the Secretary of Defense needs to know that the Secretary can impose regulations and expect those to be followed. And so it's a much broader ambit of authority than other areas of congressionally delegated authority. And that also ties back to the issue of the delegation doctrine as well. Roberts. You're telling us that the military function exception should be broader than what we've indicated or what the other courts have indicated? No. What I'm saying is that if you just look at the standard that the courts have applied to the military affairs exception, which is that we consider whether a particular thing relates directly to and has clear consequences for a military affair. That's the language, for example, this Court used in City of New York v. Permanent Mission to India. That was in reference to the foreign affairs exception. But I think the parties agree that it's the same standard. The military justice system and the consequences to active-duty service members of violating the Uniform Code of Military Justice is at the very core of running an effective military. Military discipline has to be something that the Secretary has the ability to implement as the Secretary sees fit. And so it certainly relates directly to and has clear consequences for a military affair. But if you – it's a little bit at odds with your non-delegation, I think, argument. As I understand it, what Enclosure 27 is is really sort of a compilation of lists of sexual offenses that are deemed military offenses. Is that right? It is a list of military offenses, violations of the UCMJ, that will give rise to SORNA registration requirements. Is that an administrative task that the Secretary of Defense undertakes, or is that a – is there real discretion? Well, so that's getting into the issue of the delegation. Yeah, but they're – they're now merging for me, so. There's certainly a window of discretion that the Secretary has. But I think one thing that's really important that our brief emphasizes is that we're looking at separate delegations here in the statute. There's actually three. There's Section 2911, 5A1, 2911, 5A2, and 2911, 5A4. Now, if you look at 5A1, what it says is that a sex offense is a criminal offense that has an element involving a sexual act or sexual contact with another. And you look at what the definition of criminal offense is, and it includes a military offense designated by the Secretary. So when the Secretary of Defense is designating offenses pursuant to 2911, 5A1, it's very circumscribed. There's a clear statutory limit on which military offenses can be designated pursuant to 2911, 5A1, because they have to have that limitation that's in that statutory clause. They have to have an element involving a sexual act or sexual contact with another. And that's an intelligible principle that could be? It's a very clear statutory definition that the delegatee can implement in terms of just looking at which offenses meet that definition. So you don't even need to reach the broader delegation that's in 5A4 to find that, at least with respect to the military offense of rape, there's very clear statutory guidance to the Secretary of Defense in determining whether to designate that offense as a sex offense. It's listed right there in the statute. And, again, the statutory definition of criminal offense explicitly includes military offenses designated by the Secretary. So there's no real question that on the plain text of the statute, that provision, 2911, 5A1, is a delegation to the Secretary with respect to those types of offenses, those that have an element involving a sexual act or sexual contact with another. So at least with respect to that, I would argue that the Secretary of Defense's zone of delegated authority is quite circumscribed. Kennedy, your brief relies heavily on the Chief Justice's concurring opinion in Kebido. Did he write only for himself in that case? I believe he did. But the majority opinion in the case is also rests on the combination of the military regulation clause and the necessary and proper clause, and says this is the source of constitutional authority for Congress to regulate in this area. And so Chief Justice Roberts' concurrence, as I read it, is fleshing out sort of why that particular area of authority operates the way that it does with respect to SORNA. And he's emphasizing, I think, the importance of congressional power over military regulation and why SORNA offenses specifically fall within that. But I don't think it's inconsistent with the holding of the majority, which is that this was a proper exercise of congressional power. And that majority consisted of how many members of the Court? I don't have it handy. I'm not. I'm not. We don't decide these cases on the basis of arithmetic. I understand that. But I'm just trying to get a sense of why a concurring opinion is so overwhelmingly deployed in your brief. That's the only thing. Well, I think it's just that he's the one person who's really wrestled with what are we trying to accomplish with giving the Secretary of Defense this authority. And he's the one who really delved into that issue. Nobody's disagreed with his analysis there. He was writing, I think, it wasn't strictly necessary to the result, which is perhaps why he wrote that concurring opinion. But it explains that the Secretary of Defense has this authority because of the importance of military discipline and the importance of service members knowing what the consequences will be of violating these particular military provisions. So are we to understand that the combination of that view of the Chief Justice in Kebido and the Supreme Court's decision just this past year in Gundy resolves all of these questions? Well, Your Honor, I think it's the same. What about Gundy? It's broader than that. So we're relying preliminarily on Chief Justice Roberts' opinion in Kebido with respect to the issue of the APA. With respect to the issue of the non-delegation doctrine, first, with respect to that first delegation I've described that's in 5A1, even under the minority opinion in Gundy, I think that language, does it have an element involving a sexual act or sexual contact with another, pretty clearly circumscribes the Secretary's authority and would be a proper delegation under almost any view of Congress's power. Now, what admittedly is a somewhat harder question is whether under the minority view in Gundy, the delegation in 2911, 5A4, which seemingly permits the Secretary to designate a broader category of sexual offenses, of military offenses as sex offenses for purposes of SORNA, would be constitutional under Justice Gorsuch's minority opinion in Gundy. I think it's clear that if you were to apply the standard this Court did in Gundy itself. Breyer, your adversary mentioned that there are four people potentially on the Supreme Court right now who might disagree. And we understand that. We're not into arithmetic, as the presiders say. And this Court is not to anticipate a change in the law by the Supreme Court. If you follow this Court's own precedent in Gundy, as affirmed by the Supreme Court, and the approach used by the plurality opinion in Gundy in the Supreme Court itself, I think even 5A4, there's a clear intelligible principle here. If you look at the purpose of the statute, the overall context in which this particular delegation operates, it's surrounded by other, more precise definitions of sex offense that give the Secretary guidance as to what to apply, and, of course, the legislative history, which makes it clear what sort of offenses Congress was concerned about here. The Secretary has an intelligible principle to follow that's very consistent with a large number of other statutory frameworks that have been upheld. Thanks very much.  Thank you, Your Honors. First, Kebido has nothing to do with the Administrative Procedures Act. It's not — it doesn't address it. It doesn't raise it. It's not about notice and comment. It's about a totally different clause of the Constitution, the necessary and proper clause. There are five justices majority, and then the government relies on concurring opinion. So there's — Kebido does not — does not help advance the argument here. It's from Anonymous. Better you than me, Your Honor. It's being contacted by Anonymous. And this case also has — is not about the court-martial system. There is a separate exception in the APA for when the DOD is making court-martial laws. That's not what the government has argued in its papers this Court should apply. This Court is — the government argued that the military affairs exception applies. And that makes at least marginally more sense than the court-martial exception because SORNA is a civilian federal criminal law registration requirement. It is not part of the court-martial system. SORNA is something that happens to people after they have completed their sentences and then are thinking about moving, and it's about whether or not they can be prosecuted in federal civilian courts. This is a civilian law. But what gives rise to it is a military rule, no? That is, the reason that he is subject to SORNA is for a violation, in his case, of a military law. Well, yes, Your Honor, but the only reason he's criminally prosecuted is because the Secretary of Defense decided that particular offenses under military law should apply in the civilian context. That doesn't exempt it from the notice and comment requirement. There's no reason that it should. This is not something that directly — But you said this is unrelated to military justice. And this must be related to military justice because that's what gave rise to his having to comply with the SORNA requirements. Well, the fact that he had a military conviction and the Secretary put it on the list meant that he had civilian requirements, right. But this isn't about how a court-martial system operates. It's not about what a court-martial can do within their justice system. This is about a civilian criminal law and what military offenses apply in the civilian context. And it's something that applies to people often for the rest of their lives or a very long time period, well after they are service members. This is not something directly related to the military exception. And that's why notice and comment is required here. Thank you very much, Ms. Glashauser. Thank you. Appreciate it very much, both sides.